## In re McKANE.

### (Circuit Court, S. D. New York. April 11, 1894.)

HABEAS CORPUS—APPEAL—CUSTODY OF PRISONER.

Pending an appeal from a refusal to grant the writ in behalf of a person confined under sentence of a state court, the custody of the prisoner cannot be disturbed (Rev. St. § 765; Sup. Ct. Rule 34. cl. 1); and the fact that he is daily required to perform hard labor pending the appeal gives no authority, under Rev. St. § 766, for any interference on a subsequent application for the writ.

This was a petition by John Y. McKane for a writ of habeas corpus, alleging that he was imprisoned at Sing Sing, N. Y., in violation of the laws of the United States.

Thos. A. Atchison, for petitioner.

E. M. Shepard, for respondent.

LACOMBE, Circuit Judge. The petitioner heretofore applied to this court for a writ of habeas corpus, under section 753, Rev. St. U. S., alleging that he was in custody in the state's prison at Sing Sing, under sentence of a state court, after conviction of a criminal offense, and that such custody was in violation of certain provisions of the constitution of the United States, which he duly set forth in his petition. His application for a writ was denied by this court, and from such final decision he duly appealed to the supreme court of the United States, under section 764, Id., as amended by the act of March 3, 1885, and, so far as appears, has complied with all the requirements of law and practice in the orderly prosecution of such appeal. That appeal is still pending, and the petitioner remains in the same custody in which he was held when his first application to this court for a habeas corpus was made and refused. Section 766, Id., is as follows:

"Sec. 766. Pending the proceedings on appeal in the cases mentioned in the three preceding sections, and until final judgment therein, and after final judgment of discharge, any proceeding against the person so imprisoned or confined or restrained of his liberty, in any state court, or by or under the authority of any state, for any matter so heard and determined, or in process of being heard and determined, under such writ of habeas corpus, shall be deemed null and void."

The United States supreme court, in Re Jugiro, 140 U. S. 295, 11 Sup. Ct. 770, held that the object of this section was, "in cases where the applicant was held in custody under the authority of a state court, or by the authority of a state, to stay the hands of such court or state while the question as to whether his detention was in violation of the constitution, laws, or treaties of the United States was being examined by the courts of the United States having jurisdiction in the premises;" that is, until final determination of the appeal to the supreme court, if such appeal be taken.

The petitioner now presents this second application for a habeas corpus; contending that a law of the United States, to wit, section 766, above quoted, is being violated. He shows in his petition that by the terms of his sentence, and by the provisions of the state law regulating state's prisons, he is required to do hard labor when therein confined. Thus, as he contends, his sentence, under the conviction now coming on for review by his appeal to the United States supreme court in his first proceeding, is being executed on his person dies in diem, and the warden or others in authority are each day proceeding against his person, by requiring him to do hard labor. Thus, as he insists, the hands of the state are not being stayed, as the federal statute, and the decision of the supreme court in Re Jugiro, supra, say they should be.

This is a new phase of an old question. Heretofore, the provisions of section 766 have been invoked, at least in this circuit, solely to

postpone the execution of persons under sentence of death. By reason of the circumstance that the federal statutes allow an indefinite number of applications and appeals, each appeal bringing section 766 into operation, without requiring any judicial certificate of reasonable doubt either by the court appealed from or by the court appealed to, these earlier attempts to postpone such execution were uniformly successful, whenever the attorneys conducting them were careful to conform to the statutes, the rules, and the practice of the federal courts. A reference to these proceedings will be found in Fost. Fed. Pr. § 367n. See, also, Ex parte Jugiro, 44 Fed. 754. The attention of the public being thus called to the unsatisfactory condition of federal legislation on this subject, a bill to correct possible abuses of the process of the federal courts was introduced in the senate by Mr. Senator Vest on January 12, 1891, and was referred to the judiciary committee. Apparently, it never passed, and the statutes remain as before.

The point raised here, however, is a new one. Manifestly, the infliction of the death penalty is a further "proceeding against the person" of the prisoner who has appealed from a refusal of the writ of habeas corpus. Whether the daily imposition of hard labor is or is not a further proceeding is an interesting question, which, however, need not be decided on this application. This is not a proceeding to enjoin state officers from doing any particular act, nor to punish them criminally for an assault committed in violation of law, nor to recover damages from them civilly for some wrong done to the complainant. It is an application to be discharged from a custody alleged to be illegal, and, if no sufficient warrant of law is shown for taking the prisoner out of that custody, a writ of habeas corpus will not be granted. Referring to the United States Revised Statutes, we find that sections 752 to 762 provide for writs of habeas corpus, and prescribe generally the practice to be followed upon applications therefor. Sections 763 and 764 authorize the taking of appeals from final decisions of the courts to which such applications are made, including cases where such final decision is a refusal of the writ. Then follows:

"Sec. 765. The appeals allowed by the two preceding sections shall be taken on such terms, and under such regulations and orders, as well for the custody and appearance of the person alleged to be in prison or confined or restrained of his liberty, as for sending up to the appellate tribunal a transcript of the petition, writ of habeas corpus, return thereto, and other proceedings, as may be prescribed by the supreme court, or in default thereof, by the court or judge hearing the cause."

Under this section the supreme court, in 1886, established the following regulations:

"Rule 34. Custody of Prisoners on Habeas Corpus. (1) Pending an appeal from the final decision of any court or judge declining to grant the writ of habeas corpus, the custody of the prisoner shall not be disturbed. (2) Pending an appeal from the final decision of any court or judge discharging the writ after it has been issued, the prisoner shall be remanded to the custody from which he was taken by the writ, or shall, for good cause shown, be detained in the custody of the court or judge, or be enlarged upon recognizance as hereinafter provided. (3) Pending an appeal from the final decision of any court or judge discharging the prisoner, he shall be enlarged upon recognizance, with surety, for appearance to answer the judgment of

appellate court, except where, for special reasons, sureties ought not to be required."

This rule is determinative of the pending application. It supplements section 766 by providing that, although "proceedings against the person" by state court or state authority are to be deemed null and void, the custody in which the prisoner was when he applied for the writ shall remain undisturbed despite the pendency of his appeal.

Relator's counsel insist that this clause of the rule is inconsistent with section 766, and therefore void. Evidently, the supreme court did not think so, or it would not have adopted the rule. In conformity to the regulations thus made by competent authority under a law of the United States (section 765, Rev. St. U. S.), McKane should, during the pendency of his appeal from this court's denial of his first application, remain in the custody in which he was when such application was denied. In that custody he now is, and therefore he is not in custody in violation of a law of the United States, as alleged in the petition now presented. Motion denied.