**UNITED STATES ex rel. DIOGUARDI et ux. v. FLYNN, District Director of Immigration.**

(District Court, W. D. New York. October 14, 1926.)

**1. Aliens ⬅54(16).**

District Court has no power to interfere with warrant of deportation, unless fair hearing was not accorded, or finding was unsupported by evidence.

**2. Aliens ⬅54(10)—Hearing in proceedings to deport alleged insane alien held unfair, because of acceptance of his waiver of counsel and failure to notify his relatives.**

Hearing in proceedings to deport alleged insane alien held unfair, because, though regarded as insane, his waiver of counsel was accepted, and neither his wife nor other near relative was notified of hearing, or of pendency of deportation proceeding.

**3. Aliens ⬅54(8)—Expert opinion testimony that alien's mental disability arose after entry, and that his condition had improved, should have been considered in deportation proceedings.**

In proceedings to deport alleged insane alien on ground that his condition existed at time of entry, expert opinion testimony that his disability arose after entry, and that his condition had improved, should have been considered.

**4. Habeas corpus ⬅92(1)—On habeas corpus to review deportation proceedings, court will hear case on merits, where original hearing was unfair and rehearing was denied.**

Where immigration authorities refused to grant rehearing in deportation proceedings, and hearing had was unfair, court, on habeas corpus, will not remand case for rehearing, but will hear case on merits.

Habeas Corpus. Proceeding by the United States, on the relation of Joseph Dioguardi and wife against William Flynn, District Director of Immigration. Decree in accordance with opinion.

Nicholas D. Grisanti, of Buffalo, N. Y., for plaintiffs.

Richard H. Templeton, U. S. Atty., of Buffalo, N. Y. (Richard A. Grimm, Asst. U. S. Atty., of Buffalo, N. Y., of counsel), for defendant.

HAZEL, District Judge. The relator arrived in the United States on February 3, 1921, and after being examined by a physician and an immigration inspector at Ellis

Island was permitted to enter the United States. He came to Buffalo, was married, and has two children, born here. On July 28, 1925, he became insane and was committed to the Buffalo State Hospital, where it is claimed by the government that he is a public charge "at the present time." The immigration inspector, who conducted the examination at the hospital where relator was confined, found, on the evidence before him, that he was a person of constitutional psychopathic inferiority at the time of his entry into the United States, and also that he was a person likely to become a public charge within five years after his entry from causes not affirmatively shown to have arisen subsequent thereto.

His recommended deportation to Italy, from whence he came, was approved by the Secretary of Labor, and since then an application for rehearing on evidence not before the inspector, and which he had no opportunity to produce, has been denied. In this proceeding, on the petition of the wife of the relator, it is denied that he suffered from the specified disability prior to his arrival, and also that he is likely to become a public charge. It is contended that he has not had a fair and legal hearing, in that he was not accorded the right of counsel, or the right to show by competent testimony that he was not subject to deportation on either of the specified grounds. At the examination the relator, as the record shows, waived his right to counsel and stated that he was ready to have the hearing proceed; but neither his wife, his uncle, nor his father-in-law, with whom his family lived, were notified of the summary hearing, or of the pendency of the deportation proceeding.

It is claimed that he is unfamiliar with the English language, although his answers to questions put to him do not so indicate. There was testimony to support the finding of the immigration inspector, namely, that a certificate by a medical examiner of the state hospital commission shows that the relator suffered from insanity of long duration, and that, in the opinion of the examiner, his mental condition preceded his entry. In his testimony before the inspector, the relator admitted that he was suffering from headache, and that while a soldier in the Italian army he was an inmate of the military hospital, where he was treated for a kind of fever. On the application for a writ, affidavits were presented of two qualified physicians, who examined the relator on May 9,

15 F.(2d)—37

1926, and they testify that the relator had suffered symptoms of dementia præcox at the time he was committed to the hospital, but that he has now sufficiently improved, and may safely be discharged from confinement, and, basing their opinion upon the history of the case and the records shown them at the hospital, they aver that his condition arose subsequent to his entry, and not prior thereto.

[1, 2] It is true that this court has no power to interfere with the warrant of deportation, unless it is shown that a fair hearing was not accorded him, or that the finding was unsupported by the evidence. There was some evidence, as already stated, to support the mental condition found by the inspector; but I am nevertheless of the opinion that the hearing was not fairly conducted, in view of the fact that, being regarded as an insane person, his waiver of counsel was insufficient. In my judgment, his wife or other near relative with whom he lived should have been notified, to the end that evidence might have been introduced in his behalf to negative his asserted condition prior to his landing, and also the probability of his becoming a public charge subsequent to his entry. There is no evidence contained in the record from which it may be found that the latter ground is sustainable.

[3] I think the proffered expert testimony that his condition has improved, and that his disability arose during his residence here, and not prior thereto, should have been received and considered by the Immigration authorities. I find that fair hearing was not given him.

[4] In Ex parte Gin Mun On (D. C.) 286 F. 752, a case where it appeared that the inquiry was not fairly conducted, the court deemed it unnecessary to remand the case back to the immigration authorities for another hearing, and ruled that it be had before the court on the merits. Such a procedure is supported in Chin Yow, 208 U. S. 8, 28 S. Ct. 201, 52 L. Ed. 369, wherein it was held by the Supreme Court of the United States that a hearing upon the merits may be had before the judge. See, also, Kwock Jan Fat v. White, 253 U. S. 454, 40 S. Ct. 566, 64 L. Ed. 1010. The proceeding in those cases was under the Chinese Exclusion Act, which, however, by analogy may be followed here.

Since the immigration authorities have refused a rehearing herein, this court will hear the case upon the merits at a date to be specified in the order.